**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**DWIGHT CREWS and PEGGY CREWS,**

                      **Plaintiffs,**

          v.                                    7:12-CV-1678
                                                    (FJS/DEP)

**AIR & LIQUID SYSTEMS CORPORATION;
ARMSTRONG INTERNATIONAL, INC.;
BW/IP INTERNATIONAL, INC.**, individually
and as successor-in-interest to Byron Jackson
Pumps; **CARVER PUMP COMPANY; CBS
CORPORATION**, formally known as Viacom,
Inc., successor-by-merger to CBS Corporation
formerly known as Westinghouse Electric
Corp.; **CLARK RELIANCE CORPORATION;
CRANE CO.; ELLIOT TURBOMACHINERY
COMPANY; FLOWSERVE CORPORATION**,
also known as BW/IP International, Inc., as
successor-in-interest to Byron Jackson Pumps;
**FOSTER WHEELER ENERGY CORPORATION;
GENERAL ELECTRIC COMPANY; ICON
MANAGEMENT SERVICES, LLC**, individually
and as successor in interest to Jerguson
Valve and Gauge Company; **IMO INDUSTRIES,
INC.**, individually and as successor-in-interest to
Delaval Steam Turbine, Inc.; **INGERSOLL-RAND
COMPANY; JOHN CRANE, INC.; NATIONAL
SERVICE INDUSTRIES, INC.**, formerly known
as North Brothers, Inc.; **PNEUMO ABEX
CORPORATION; ROCKWELL INTERNATIONAL
CORP.; SEQUOIA VENTURES, INC.** also known
as Bechtel Corporation; **UNION CARBIDE
CORPORATION; WARREN PUMPS, LLC;
WEINMAN PUMP AND SUPPLY COMPANY;
and YARWAY CORPORATION,**

                      **Defendants.**

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **NAPOLI BERN RIPKA**<br>**SHKOLNIK & ASSOCIATES LLP**<br>350 Fifth Avenue, Suite 7413<br>New York, New York 10118<br>Attorneys for Plaintiffs | **MICHAEL COHAN, ESQ.**<br>**KARDON A. STOLZMAN, ESQ.** |
| **K & L GATES LLP**<br>599 Lexington Avenue<br>New York, New York 10020-6030<br>Attorneys for Defendant Crane Co. | **ANGELA DIGIGLIO, ESQ.**<br>**ERIC R.I. COTTLE. ESQ.**<br>**NICOLE M. KOZIN, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Although Plaintiffs' complaint contains six causes of action, only their first cause of action for negligence, their third cause of action for failure to warn as it relates to Plaintiff Dwight Crews' exposure to asbestos aboard a military vessel, and their sixth cause of action for loss of consortium apply to Defendant Crane Co. Currently before the Court is Defendant Crane Co.'s motion for summary judgment.[1] *See* Dkt. No. 112. Plaintiffs oppose this motion. *See* Dkt. No. 138. The Court heard oral argument in support of, and in opposition to, this motion on December 11, 2013, and reserved decision at that time. The following is the Court's written disposition of the pending motion.

### II. BACKGROUND

Plaintiff Dwight Crews (hereinafter referred to as "Plaintiff") suffers from malignant

---

[1] In addition to Defendant Crane Co., there are three other Defendants that remain in this case: IMO Industries Inc., Ingersoll-Rand Company, and Warren Pumps, LLC.

mesothelioma.  Plaintiff served in the U.S. Navy from 1965 to 1971.  He served aboard the USS Wright for six months in 1966.  He entered as a fireman apprentice and was promoted to fireman.  Aboard the USS Wright, Plaintiff worked in close proximity to senior officers in the engine room who performed maintenance on pumps and valves.

Plaintiff achieved the rank of Second Class Petty Officer  Machinist Mate.  After completing nuclear training, he served as a Machinist Mate Second Class aboard the USS Bainbridge from approximately 1968 to 1971.  Aboard the USS Bainbridge, Plaintiff was responsible for maintenance and repair of equipment that included pumps and valves.

Plaintiff alleges that he was exposed to asbestos while he worked on, and in the direct vicinity of other naval officers who performed work on, asbestos-containing Crane gaskets on both the USS Wright and USS Bainbridge.  Plaintiff states that he knew the gaskets were asbestos through his experience and training in the Navy.  He asserts that he worked with gaskets that Defendant Crane manufactured at least once a day.  He knew that they were Crane gaskets because the name "Crane" was written on the gasket material.  He describes the gasket as a "fibrous material" put in between flanges, or valve casings, where the two halves of the casing come together in order to prevent leakage.  Plaintiff cut the gaskets with a ball-peen hammer, which created dust that he breathed.  He also removed gaskets from Crane valves with either a paint scraper or a wire brush, which created dust that he breathed.

Furthermore, Plaintiff asserts that he knew that the valves with which he worked were Crane valves because the name Crane was on the valve casing.  Plaintiff removed and was in direct vicinity of other officers who removed Crane gaskets from the internal bonnet of Crane valves, which created dust that he breathed on many occasions.  Finally, Plaintiff states that he

was exposed to asbestos-containing packing materials through his work with Crane valves. He pulled asbestos packing from the packing glands of Crane valves, which created dust that he breathed. He performed this work numerous times, as well as working in the direct vicinity of others who removed packing from Crane valves that created dust that he breathed.

## III. DISCUSSION

**A.    Applicable law**

Whether maritime law or New York law applies to Plaintiff's claims against Defendant Crane Co. is a threshold determination that is a question of federal law[.] *See Floyd v. Air & Liquid Sys. Corp.*, MDL No. 875, 2012 WL 975615, *1 (E.D. Pa. Feb. 8, 2012) (citing U.S. Const. art. III, § 2; 28 U.S.C. § 1333(1)). For maritime law to apply, "a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test." *Id.* (citation omitted). "The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters." *Id.* (citation omitted). In determining whether the work was on "navigable waters," "work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters." *Id.* (citation omitted).

In this case, the parties agree that maritime law applies to Plaintiff's claims against Defendant Crane Co. Plaintiff served in the Navy from 1965 to 1971 and alleges that he was exposed to asbestos related to Defendant Crane Co.'s products on both the USS Wright and the USS Bainbridge. Based on these assertions, the Court concludes that Plaintiff's claims against Defendant Crane Co. satisfy both the locality and the connection test; and, therefore, the Court

will apply maritime law to Plaintiff's claims.

**B.      Summary judgment standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, the court's role is to determine "whether there is the need for a trial whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In making this determination, the court must view the evidence in the record and draw all reasonable inferences in the light most favorable to the non-moving party. *See Consol. Risk Servs., Inc. v . Auto. Dealers WC Self Ins. Trust*, No. 1:06-CV-871, 2010 U.S. Dist. LEXIS 68401, *10 (N.D.N.Y. July 9, 2010) (citation omitted).

Summary judgment is appropriate if the party that bears the burden of proof at trial fails to establish an essential element of its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. Thus, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted).

### C. Strict liability and negligence claims

"Absent a controlling statute, maritime law is 'developed by the judiciary' and is 'an amalgam of traditional common-law rules, modifications of those rules, and newly created rules.'" *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 796 (E.D. Pa. 2012) (quoting *E. River Steamship*, 476 U.S. at 864-65, 106 S. Ct. 2295). Thus, courts look to both admiralty and state common law when analyzing products liability claims under maritime law. *See id.* In products liability cases under maritime law, a plaintiff may proceed under both negligence and strict liability theories. *See Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005). Under either theory, a plaintiff is required to establish causation. *See id.* (citing *Stark v. Armstrong World Indus., Inc.*, 21 Fed. Appx. 371, 375 (6th Cir. 2001)). In order to prove such causation, "a plaintiff [must] show, for each defendant, that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Id.* (citation omitted). In addition, as one court has noted, "there is also a requirement (implicit in the test set forth in *Lindstrom* and *Stark*) that a plaintiff show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged." *Cardaro v. Aerojet Gen. Corp.*, MDL No. 875, 2012 WL 3536243, *1 (E.D. Pa. July 27, 2012) (citing *Abbay v. Armstrong Int'l., Inc.*, No. 10-83248, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (Robreno, J.)).

Resolution of the present motion rests on whether Plaintiff has come forward with sufficient evidence to demonstrate that there is a dispute about a material issue of fact as to whether he was exposed to any of Defendant Crane Co.'s products and, if so, whether any of those products were a substantial factor in causing his injury. In this case, Plaintiff appears to

argue that he was exposed to the original valves that Defendant Crane Co. manufactured and supplied to the Navy for use on the USS Wright and the USS Bainbridge at the time those vessels were built. He also appears to argue that these "original" valves included asbestos-containing gaskets and packing materials at the time that Defendant Crane Co. supplied them to the Navy. Finally, Plaintiff asserts that he was exposed to asbestos-containing replacement gaskets and packing materials that Defendant Crane Co. supplied to the Navy for use on the USS Wright and the USS Bainbridge during the times that Plaintiff was aboard those ships.

### *1. The original valves that Defendant Crane Co. supplied to the Navy*

There is apparently no dispute that Defendant Crane Co. manufactured valves or that Defendant Crane Co. supplied valves to the Navy for use on the USS Wright and the USS Bainbridge at the time those vessels were built. However, Plaintiff has not pointed to any evidence that he was exposed to those original valves or, even if he were, that he was exposed to the original packing or gasket materials that were allegedly part of those original valves. Moreover, given the timing of events, it is highly unlikely that he would have been. The USS Wright was built during World War II, nearly forty years prior to the time that Plaintiff was aboard that vessel. Likewise, the USS Bainbridge was commissioned in the early 1960s, a minimum of five years prior to Plaintiff's service on that ship.

Based on the lack of any evidence in the record to show that Plaintiff was exposed to any asbestos-containing materials that might have been part of the original valves that Defendant Crane Co. manufactured and supplied to the Navy for use on the USS Wright and USS Bainbridge at the time those ships were built, the Court grants Defendant Crane Co.'s motion for

-7-

summary judgment with respect to Plaintiff's negligence and strict products liability claims insofar as those claims relate to Defendant Crane Co.'s valves.

### *2. Replacement gaskets and packing materials*

Plaintiff asserts that Defendant Crane Co. supplied the replacement gaskets and packing materials to which he was exposed. He also asserts that he knew these materials were Defendant Crane Co.'s products because the word "Crane" appeared on them. Finally, he contends that he was exposed to these products on a regular basis while he was aboard the USS Wright and the USS Bainbridge.

In his original deposition, Plaintiff stated that he did not know the manufacturer of the materials with which he worked. At his later videotaped deposition, however, he testified that the word "Crane" appeared on these materials. Now, for the first time, in opposition to Defendant Crane Co.'s motion for summary judgment, Plaintiff states in his memorandum of law that he was exposed to "Cranite," a product that was manufactured exclusively for Defendant Crane Co. and which Defendant Crane Co. supplied to the Navy.

In response, Defendant Crane Co. asserts that "Cranite" is not at issue in this case because Plaintiff has never testified that he was exposed to "Cranite" or that any product to which he was exposed had the word "Cranite" on it. Furthermore, Defendant Crane Co. argues that Plaintiff has not presented any evidence to show that Defendant Crane Co. supplied "Cranite" to the Navy or, even if it had provided "Cranite" to the Navy at one time, that it had supplied "Cranite" to the Navy for use on the USS Wright or the USS Bainbridge during the time that Plaintiff was aboard those ships.

There is no evidence in the record that Defendant Crane Co. manufactured replacement gaskets or packing materials. Plaintiff, however, argues that it is not necessary for him to demonstrate that Defendant Crane Co. manufactured such materials because he has at least raised an issue of fact as to whether Defendant Crane Co. supplied these materials to the Navy and, thus, had a duty to warn users like Plaintiff about the dangers of exposure to asbestos-containing materials.

There are two "Crane" Defendants in this action: Defendant Crane Co. and Defendant John Crane, Inc. There is no evidence in the record that Plaintiff has been able to identify whether the replacement gaskets and packing materials to which he was exposed were products that Defendant Crane Co. supplied or were products that Defendant John Crane, Inc. manufactured and/or supplied. With respect to this issue, the evidence is limited to Plaintiff's testimony that the word "Crane" appeared on these products.

Plaintiff, possibly realizing that his inability to identify which of the Crane Defendants manufactured and/or supplied the asbestos-containing products to which he was exposed might be problematic, now, for the first time, asserts in his memorandum of law that the product to which he was exposed was "Cranite." However, there is nothing in the record to support this assertion. Although Plaintiff has produced what appears to be Defendant Crane Co.'s product catalog for 1953, in which there is a picture of a product called "Cranite,"[2] this evidence does not demonstrate that Defendant Crane Co. supplied "Cranite" to the Navy at any time, let alone for the Navy's use on the USS Wright or the USS Bainbridge during the relevant time frame.

---

[2] The Court also notes that in this picture of the product "Cranite," the word "Cranite" is prominently displayed on the product, whereas the word "Crane" if it appears at all (it is difficult to see in the picture) is in much smaller letters.

Furthermore, during neither of his depositions did Plaintiff ever mention that he was exposed to or worked with a product called "Cranite."

Given the facts of this case and the lack of sufficient evidence to indicate that Defendant Crane Co., rather than Defendant John Crane, Inc., supplied the allegedly asbestos-containing materials to which Plaintiff was exposed aboard the USS Wright and the USS Bainbridge, the Court finds that Plaintiff has come forward with nothing more than conclusory allegations and speculation, which are insufficient to create a genuine issue of fact as to whether Defendant Crane Co. supplied the asbestos-containing replacement gaskets and packing materials to which Plaintiff was exposed. *See Lindstrom v. AC Prods. Liab. Trust*, 264 F. Supp. 2d 583, 594 (N.D. Ohio 2003) (granting Crane Co.'s motion for summary judgment where the plaintiff had sued both Crane Co. and John Crane and was unable to "clearly establish that Crane Co. was the manufacturer or supplier of a specific asbestos-containing product"). Thus, because Plaintiff cannot, based on these conclusory and speculative assertions, establish an issue of fact with regard to the causation element of his products liability and negligence claims, the Court concludes that summary judgment is appropriate. Furthermore, because Plaintiff has not come forward with sufficient evidence to demonstrate that Defendant Crane Co. supplied these products, the Court also concludes that Defendant Crane Co. had no duty to warn Plaintiff about the dangers of third-party products that were used with its valves because it neither had any control over the production of these products nor placed them into the stream of commerce. *See Surre v. Foster Wheeler LLC*, 831 F. Supp. 2d 797, 801 (S.D.N.Y. 2011) (citations omitted).

For all these reasons, the Court grants Defendant Crane Co.'s motion for summary

judgment with respect to Plaintiff's failure-to- warn claims.[3]

### IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and oral arguments and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Crane Co.'s motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that, with respect to the motion for leave to amend their complaint that Plaintiffs filed on January 7, 2014, *see* Dkt. No. 159, the remaining Defendants in this case shall file their responses in opposition to that motion or, if they have no opposition, shall file a letter with the Court stating that they do not oppose Plaintiffs' motion on or before **March 4, 2014**. If any of the remaining Defendants file papers in opposition to Plaintiffs' motion, Plaintiffs may, if they wish, file a reply in further support of their motion on or before **March 18, 2014**.

**IT IS SO ORDERED.**

Dated: February 18 , 2014
      Syracuse, New York

                              Frederick J. Scullin, Jr.
                              Senior United States District Court Judge

---

[3] The result is the same whether Plaintiff relies on a negligence or strict products liability theory for his failure-to-warn claims.